UNITED STATES DISTRICT COURT

OF MASSACHUSETTS

CIVIL ACTION NO:

| | |
|---|---|
| Amanda Ortiz | ) |
| *Plaintiff* | ) |
| V. | ) |
| Officer Marc Birritteri | ) |
| *Defendant* | ) **COMPLAINT FOR CIVIL PENALTIES** |
| | ) **AND DEMAND FOR JURY TRIAL** |
| Revere Police Department | ) |
| *Defendant* | ) |
| City of Revere | ) |
| *Defendant* | ) |

## **INTRODUCTION**

1. This is a civil action seeking damages for civil rights violations arising under 42 U.S.C. § 1983 for wrongful arrest, unlawful search and seizure, and malicious prosecution by Officer Marc Birretteri.

2. On December 10, 2020, at approximately 9:00 PM the Plaintiff left her job and on her commute home, was rear-ended by an intoxicated driver.

3. The car that hit the Plaintiff put its hazard lights on like it was going to pull over and then proceeded to drive away. The Plaintiff called 911 and began following the vehicle.

4. The hit and run driver was not able to get away because there was considerable traffic and traffic lights, so he pulled into the A1 gas station, exited his vehicle, and started talking with the Plaintiff.

5.  Shortly thereafter Officer Marc Birritteri arrived on the scene got out of his vehicle and immediately smelled alcohol.
6.  The hit and run driver, Pedro Montiel, license was suspended for a current OUI charge. He also reeked of alcohol, refused field sobriety tests and a breathalyzer after which he was promptly arrested.
7.  After seeing Mr. Montiel arrested, the Plaintiff asked Officer Marc Birritteri "What happened," to which Officer Birritteri replied, "The same thing that is about to happen to you."
8.  The Plaintiff demanded a breathalyzer to which Officer Birritteri replied "You can get one at the station."
9.  Officer Birritteri then told the Plaintiff, "We are going to do a field sobriety test."
10. Officer Birritteri then proceeded to conduct several field sobriety tests that were not approved by the National Highway Traffic Safety Administration (NHTSA), including "The English Alphabet."
11. After reciting the alphabet once, the Plaintiff grabbed her cell phone and started recording. On video Officer Birritterri asks the Plaintiff to recite the alphabet and stop at "X."
12. The Plaintiff recited the alphabet, and stopped at the letter "S," confusing the linguistics of the instruction from Officer Birritteri.  The Plaintiff is a native Spanish speaker.
13. Officer Birritteri disrespectfully replied, "It's Q-R-S-T-U-V-W-X," and then demanded the Plaintiff put her cell phone down on the police cruiser and led her away from the vehicle.
14. The next four minutes is only audio and is hard to discern because the tow truck arrives, and its idling diesel engine muffles the interaction between the Plaintiff and Officer Birritteri.  The Plaintiff can be heard saying, "Is your body-cam on."
15. After four minutes, the cell phone is picked up again by the Plaintiff and shows Officer Birritteri with his hand on the driver's side door about to enter the vehicle of the Plaintiff.
16. The Plaintiff yells, "Excuse me, excuse me," and steps in front of the driver's side door, and demands an explanation.
17. "I just gave you a field sobriety test, you failed. And now you're interfering with police. Turn around you're under arrest. Turn around, stop resisting"
18.  Officer Birritteri then grabs the phone from the Plaintiff and shuts off the recording.

19. Officer Birritteri then proceeded to violently search the Plaintiff's car ripping off the electrical box, tearing through every inch of the car, and damaged her college books and papers.  No contraband or evidence of crime was found as a result of the search.
20. At the Revere Police Station, Officer Matthews detected no signs of impairment and administered a breathalyzer to the Plaintiff where no alcohol was detected.
21. Officer Birritteri then charged the Plaintiff with OUI Drugs, Operating Negligent, Interfering with a Police Officer, Disorderly Conduct, and Resisting Arrest.
22. Officer Birritteri then would not release the Plaintiff for several hours and made her sit without a jacket in a holding cell, even though multiple members of her family were at the station asking for her release.
23. At approximately 1:00 AM, the Plaintiff was released and told to be in Court the next morning at 8:00 AM.
24. The Plaintiff went to Beth Israel Hospital for blood work after attending court from 8:00 AM to 12:00 PM.
25. The blood work was negative for drugs or alcohol, and the ADA dropped the charges at the Plaintiff's arraignment after reading the police report and looking at "The evidence."

## THE PARTIES

26. The Plaintiff, Amanda Ortiz, resides at 96 Hichborn St. apt. #2, Revere, MA 02151.
27. Officer Marc Birritteri is an officer for the Revere Police Department.
28. Revere Police Department is located at 400 Revere Beach Pkwy, Revere, MA 02151.
29. The City of Revere is a city in Massachusetts with an address of 281 Broadway, Revere, MA 02151.

## JURISDICTION AND VENUE

1. Jurisdiction is proper because the action arises out of a civil rights violation under 42 U.S.C. § 1983.
2. Venue is proper as the incident took place in Revere, Massachusetts and the Defendants are all located in Revere, Massachusetts.

## STATEMENT OF FACTS

30. On December 10, 2020, at approximately 9:00 PM the Plaintiff left her job at Bath and Body Works in Burlington MA and started commuting back to her apartment in Revere.

31. On her commute home, the Plaintiff was driving in the far-right lane of Route 16 when a white SUV suddenly pulled out in front of her. As the Plaintiff applied her brakes to avoid a collision, she was rear-ended by the car behind her.
32. The car that hit the Plaintiff put its hazard lights on like it was going to pull over and then proceeded to drive away.
33. The Plaintiff called 911, carefully switched lanes, and at a low rate of speed began following the vehicle. The hit and run driver was not able to get away because there was considerable traffic and traffic lights.
34. Seeing he could not get away, the hit and run driver pulled his car into the A1 gas station, exited his vehicle, and started talking with the Plaintiff. Shortly thereafter Officer Marc Birritteri arrived on the scene.
35. The Plaintiff alerted Officer Birritteri that it was she who had called the police because of the hit-and-run.
36. Officer Birritteri smelled alcohol, requested the licenses of both drivers, and called for backup.
37. The hit and run driver, Pedro Montiel, had no license because it was suspended for a current OUI charge.
38. Mr. Montiel reeked of alcohol, refused field sobriety tests and a breathalyzer after which he was promptly arrested.
39. After seeing Mr. Montiel arrested, the Plaintiff asked Officer Marc Birritteri "What happened," to which Officer Birritteri replied, "The same thing that is about to happen to you, you both reek of alcohol."
40. The Plaintiff was disbelief and stated "That's impossible, I just left work, I'm trying to get home because I have work in the morning. I'll just take a breathalyzer."
41. Officer Birritteri replied "You can get one at the station, we are going to do a field sobriety test."
42. The Plaintiff communicated to Officer Birritteri that she wanted a breathalyzer and that she did not want to do any field sobriety tests.
43. Officer Birritteri kept interrupting "You can get it down at the station," and gave instructions to the first field sobriety test, which was to count backwards from thirty despite the Plaintiff's refusal.

44. The Plaintiff counted backwards from thirty to twelve as instructed, but Officer Birritteri wrote in his police report, "The first test she completed, the second test she did not stop at twelve and paused to think."
45. Officer Birritteri then wrote in his police report, "The second test was the English alphabet,"
46. Officer Birritteri instructed the Plaintiff to say the English alphabet stopping at the letter X.
47. The Plaintiff proceeded to recite the English alphabet but was interrupted halfway through by Officer Birritteri who said, "DON'T SING IT, start again."
48. The Plaintiff then took out her cellular phone and started recording the interaction. Officer Birritteri then asks the Plaintiff to recite the alphabet, this time stopping at the letter X.
49. The Plaintiff, who is a native Spanish speaker, completed the alphabet stopping at the letter S, to which Officer Birritteri replied, "It's Q-R-S-T-U-V-W-X."
50. The Plaintiff felt that she was being racially discriminated against as the tests for her sobriety were related to English fluency.
51. Officer Birritteri then instructed the Plaintiff to put her phone down on the police cruiser and led her away from the vehicle so if the phone was still recording, the interaction would not be heard.
52. The tow truck arrives, and its idling diesel engine muffles the interaction between the Plaintiff and Officer Birritteri.
53. The Plaintiff completes the Walk and Turn Test, and the One-Legged Stand and her counting can be heard on the audio of the recording.
54. The Plaintiff also asks Officer Birritteri on the recording, "Is your body-cam on."
55. After the tests were complete, the cellular phone is picked up off the police car and is pointed at Officer Birritteri, who has his hand on the driver side door of the Plaintiff's car.
56. The Plaintiff says, "Excuse me!!! Explain why you are towing my car, I deserve an explanation."
57. Officer Birritteri then wrote in his police report, "I then told her that she failed the field sobriety test, and that I was towing her car." "She continued to interfare and block me from getting into her car. This went on for a couple minutes."

58. The video depicts a completely different version of events where Officer Birritteri does not give the Plaintiff any explanation why he is about to enter her car.
59. After the Plaintiff demands an explanation, Officer Birritteri tells her to step away from him, that her car will be getting towed.
60. Officer Birritteri then asks for the handcuffs from Officer Griffin, and tells the Plaintiff to turn around, and put her hands behind her back.
61. The Plaintiff repeatedly asks, "Can you explain, can you explain, can you explain."
62. Officer Birritteri then states, "I just gave ya a field sobriety test, you failed, and now you are interfering with police."
63. The video also shows Officer Birritteri placing the Plaintiff in handcuffs, grabbing her cell phone, and turning off the recording.
64. Officer Birritteri then proceeded to violently search the Plaintiff's car ripping off the electrical box, tearing through every inch of the car, while damaging her belongings including her college books and papers.  No contraband or evidence of crime was found as a result of the search.
65. A video from the tow lot was taken when the Plaintiff retrieved her car the next day.  The car is in disarray with the electrical box ripped off and sitting on the driver's seat floor.
66. At the Revere Police Station, Officer Matthews detected no signs of impairment and administered a breathalyzer to the Plaintiff where no alcohol was detected.
67. Officer Birritteri wrote in his report, "Officer Matthews did stated that it is common for poeple that are on narcotics, when their adrenaline gets pumping the effects of the drugs go away. Please note: There was a length of time that had passed before Officer Matthews had talked to Amanda."
68. Officer Birritteri then charged the Plaintiff with OUI Drugs, Operating Negligent, Interfering with a Police Officer, Disorderly Conduct, and Resisting Arrest.
69. Officer Birritteri also wrote in the police report, that the hit-and-run driver, Mr. Montiel thanked him multiple times, shook his hand, and was appreciative of him. "He stated that I treated him better than any police officer that he has ever dealt with."
70. Officer Birritteri then would not release the Plaintiff for several hours and made her sit in a holding cell, even though multiple members of her family were at the station asking for her release.

71. At approximately 1:00 AM, the Plaintiff was released and told to be in Court the next morning at 8:00 AM.

72. The Plaintiff went to Beth Israel Hospital for blood work after attending court from 8:00 AM to 12:00 PM.

73. The blood work was negative for drugs or alcohol, and the ADA dropped the charges at the Plaintiff's second arraignment on Wednesday December 16, 2020 after reading the police report.

## COUNT 1- FALSE ARREST/UNLAWFUL DETENTION

74. The Plaintiff re-alleges and incorporates herein by reference, all of the allegations contained in the preceding paragraphs.

75. Officer Birritteri was in uniform and was a member of the Revere Police Department while working in his official capacity the evening of the arrest.

76. Officer Birritteri told Plaintiff she was would be arrested before conducting any field sobriety tests.

77. Officer Birritteri refused to administer a breathalyzer to the Plaintiff after she had requested one to prove her sobriety.

78. Officer Birritteri requested a tow truck for the Plaintiff's car, before conducting any field sobriety tests.

79. Officer Birritteri acting under the color of law, placed the Plaintiff under arrest, handcuffed her, and brought her to the Revere Police Station.

80. Officer Birritteri held the Plaintiff in custody for approximately three hours until 1:00 AM, even though multiple members of her family were at the police station with money for her bail.

81. The Plaintiff went to Beth Isreal Hospital for blood work which conclusively showed that there were no drugs or alcohol in her system when Officer Birritteri arrested her.

82. The Plaintiff who had no prior arrests or criminal history and was further damaged when her charges were posted in the Revere Journal. The article stated, "The officers arrested Amanda P. Ortiz, 23, of 96 Hichborn St., for the criminal offenses of operating a MV while under the influence of drugs, disorderly conduct, resisting arrest, interfering with a police officer in the conduct of his duty, and negligent operation of a MV.

## COUNT II- UNLAWFUL SEARCH AND SEIZURE

83. The Plaintiff re-alleges and incorporates herein by reference, all of the allegations contained in the preceding paragraphs.
84. Officer Birritteri had his hand on the driver side door and was going to enter the Plaintiff's car without her permission.
85. The Plaintiff demanded an explanation before Officer Birritteri entered her car.
86. Officer Birritteri responded by arresting and searching the Plaintiff's vehicle without probable cause or a search warrant.
87. Officer Birritteri also exceeded the scope of a search incident to a lawful arrest when he tore through the entire car of the Plaintiff.
88. Officer Birritteri ripped off the electrical covering, exposing the electrical panel inside the Plaintiff's car.
89. Officer Birritteri also opened and searched the trunk of the Plaintiff's vehicle without a valid search warrant or probable cause.
90. The unlawful search recovered nothing incriminating, however it resulted in destroyed property, specifically the Plaintiff's college books and papers.

## COUNT III- MALICIOUS PROSECUTION

91. The Plaintiff re-alleges and incorporates herein by reference, all of the allegations contained in the preceding paragraphs.
92. Officer Birritteri told the Plaintiff that she was going to be arrested before investigating.
93. Officer Birritteri refused to conduct a breathalyzer because he knew it could exonerate the Plaintiff.
94. Officer Birritteri called for a tow truck for the Plaintiff's car before she performed the field sobriety tests.
95. Officer Birritteri did not give the Plaintiff an option to refuse the field sobriety tests.
96. When the Plaintiff attempted to refuse to submit to the field sobriety tests by asking for the breathalyzer, Officer Birritteri talked over her with the instructions.
97. Officer Birritteri's first two field sobriety tests are not approved by the National Highway Traffic Safety Administration and have no scientific validity. This includes "the second test, the English Alphabet."

98. Officer Birritteri did not conduct the horizontal gaze nystagmus test which is supported by the NHTSA and the most scientifically reliable.
99. Officer Birritteri charged the Plaintiff with OUI-Drugs only after her breathalyzer at the station was negative for alcohol.
100. Officer Birritteri charged the Plaintiff with negligent operation without putting any facts or evidence in his police report about her driving.
101. Officer Birritteri charged the Plaintiff with Interfering with a Police Officer when she asked him for an explanation for why he was entering/towing her car.
102. Officer Birritteri lied in his police report when he said the Plaintiff blocked him from getting into her car, "For a couple minutes." The video evidence contradicts this account.
103. Officer Birritteri charged the Plaintiff with resisting arrest when she turned around and complied with his order. The arrest was captured on video.
104. Officer Birritteri also charged the Plaintiff with Disorderly Conduct as an additional charge without probable cause.
105. The Plaintiff had all of her charged dismissed three days later at her arraignment after the District Attorney found no evidence of her guilt in the police report.

## COUNT IV- FAILURE TO TRAIN

106. The City of Revere has a duty to fund and finance the police department and the training of its officers.
107. The Revere Police Department has a duty to train its officers to uphold the law and the handbook of the department.
108. The Plaintiff has a 4th Amendment right against false arrest, unlawful search and seizure, and malicious prosecution.
109. The inadequate training of Officer Birritteri led to the violation of the Plaintiff's rights which are federally protected.
110. The inadequate training of Officer Birritteri by the Revere Police Department caused the Plaintiff to be injured as a result.

**PLAINTIFF REQUESTS A JURY TRIAL ON ALL TRIABLE CLAIMS**

## **PRAYERS FOR RELIEF**

Wherefor the Plaintiff requests that this court:

1. Enter a judgement against the Defendants for False Arrest, Unlaw Search and Seizure, Malicious Prosecution, and Failure to Train under 42 U.S.C. § 1983.
2. Award compensatory damages for the harm suffered as a result of the Defendant's wrongful conduct.
3. Award punitive damages for the Defendant's malice intent,
4. Award reasonable attorney's fees and costs.
5. Any other relief the Court deems fair and equitable.

Respectfully Submitted,

Amanda Ortiz,

By Her Attorney:

_____
Andrew R. Burger

BBO #706458
48 Elm St #1
Andover, MA 01810
603-344-8955
Andrew.ryan238@gmail.com

## **CERTIFICATE OF SERVICE**

    I hereby certify that copies of the foregoing were served by certified mail to all counsel and parties of record registered to receive such notice.

Date: September 16, 2021

/s/Andrew R. Burger

Andrew R. Burger
